UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME BROWN,
        Plaintiff,                            CIVIL ACTION NO. 12-13716

     v.                                   DISTRICT JUDGE TERRENCE G. BERG

                                        MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 16, 19)**

Plaintiff Jerome Brown challenges the Commissioner of Social Security's ("Defendant") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 16, 19). Plaintiff also responded to Defendant's motion (Dkt. No. 20). Judge Thomas L. Ludington referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 4). The case was subsequently reassigned to Judge Terrence G. Berg (Dkt. No. 18).

**I.    RECOMMENDATION**

Because Plaintiff satisfies listing 12.05(C) for mental retardation – and is, therefore, conclusively presumed to be disabled at step three – this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner for calculation and award of benefits.

**II.    DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.   *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts") (internal quotation marks omitted).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *See*

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.     REPORT

#### A.     *Administrative Proceedings*

Plaintiff applied for supplemental security income and disability insurance benefits on September 17, 2008, alleging he became disabled on January 2, 2007 (Tr. 10). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a video hearing before Administrative Law Judge ("ALJ") Rebecca LaRiccia, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 10-19). Plaintiff requested an Appeals Council review (Tr. 28). On May 14, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-4).

#### B.     *ALJ Findings*

Plaintiff was 31 years old on his hearing date in October of 2010 (Tr. 33). He is a high school graduate – through special education – and has past relevant work as a grocery store bagger, fast-food worker, dishwasher, machine operator, stock worker and lawn care provider (mowing lawns and weed wacking) (Tr. 18-19, 33). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since July of 2007 (Tr. 12).[1]

---

[1] Plaintiff worked after his alleged disability onset date in January of 2007; however, the ALJ found that after July 24, 2007, Plaintiff's earnings did not rise to the level of substantial

At step two, the ALJ found that Plaintiff had the following "severe" impairment: mild mental retardation (Tr. 12). The ALJ found that Plaintiff's depression was a non-severe impairment (Tr. 13).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 13).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> medium work . . . except [Plaintiff] can understand, remember and carry out simple, routine, repetitive tasks with reading and math at no more than a 3rd grade level. In addition, [Plaintiff] will need instructions to be presented verbally.

(Tr. 15).

At step four, the ALJ found that Plaintiff had past relevant work as a grocery store bagger, fast-food worker, dishwasher, machine operator, stock worker and law care provider (Tr. 18-19). Accordingly, the ALJ determined Plaintiff was not disabled (Tr. 19).

### C.   *Administrative Record*

#### 1.   **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified that he is a slow learner. He has trouble understanding things (which frustrates him); anger problems (which require him to either walk from situations or isolate himself to calm down); depression; anxiousness; pain in his lower back; and trouble with math, reading and paying bills (Tr. 35-37, 39, 43-44). Plaintiff's anger problems have made it difficult for him to get along with supervisors in work settings (Tr. 44).

---

gainful activity (Tr. 12).

Plaintiff can use a microwave, make sandwiches and do laundry (although he does not know how much detergent to use) (Tr. 38-39, 46).  On a typical day, Plaintiff watches television and plays video games; he does not drive (Tr. 39).

### 2. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education and work experience.  The individual has no exertional limitations, but can only understand, remember and carry out simple, routine, repetitive tasks.  The individual can only read and perform math at a third-grade level and needs verbal instructions (Tr. 48).  The VE testified that such an individual could perform Plaintiff's past relevant work as a fast-food worker, dishwasher and machine operator (Tr. 48).

When the ALJ added to the hypothetical that the individual could not tolerate even simple changes in the workplace, the VE testified that the individual would be precluded from work (Tr. 48-49).

### D.     *Plaintiff's Claim of Error*

Plaintiff argues that the ALJ erred at step three of the disability analysis by failing to find his impairments satisfy listing 12.05(C):

> **12.05** *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> .   .   .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

"[T]he purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range *and* a limitation of function that affects his work." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997) (quoting *Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997)) (emphasis added). Plaintiff has the burden to demonstrate his impairments satisfy listing 12.05(C). *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In addition to an IQ of 60-70 and another physical or mental impairment that limits his function, Plaintiff must present evidence to support "onset of the 'significantly subaverage general intellectual functioning with deficits in adaptive functioning' before age 22." *Id.* at 354-55.

Defendant does not dispute that Plaintiff satisfies two of the three requirements for mental retardation: (1) he has an IQ of 60-70; and (2) he had significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22. The issue is whether Plaintiff has another physical or mental impairment that imposes an additional and significant work-related limitation of function. Plaintiff says his depression constitutes a mental impairment that limits his ability to function in the work setting; the ALJ disagreed, stating:

> [Plaintiff's] medically determinable mental impairment of depression does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere. [Plaintiff] did not testify to any symptoms of depression at the hearing, only that he gets angry easily and is not able to control himself and needs to walk away or be alone.

(Tr. 13).

To determine whether Plaintiff's depression imposes an additional and significant work-related limitation of function, it must constitute a "severe" impairment. *See Oddo v. Astrue*, 2012 WL 7017622 at *4 (N.D. Ohio Dec. 10, 2012) (citing 20 CFR Part 404, Subpt. P, App. 1, § 12.00A). This is the same standard used to evaluate impairments at step two. *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) (whether a claimant has a § 12.05C "significant work-related limitation of function" should parallel the step two standard).

-7-

Severity is evaluated using a *de minimus* standard. *Boger v. Comm'r of Soc. Sec.*, No. 11-15526, 2013 WL 1279162 at *4 (E.D. Mich. March 27, 2013) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "The threshold is low and 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Id.* (quoting *Maloney v. Apfel*, 211 F.3d 1269 (6th Cir. 2000)). Plaintiff argues that Dr. David D. Wacker's findings support a finding that his depression meets the *de minimus* standard.

Dr. Wacker – a Psychologist hired by the Social Security Administration – is the *only* medical consultant who examined Plaintiff and rendered an opinion about his depression. On March 9, 2010, Dr. Wacker gave Plaintiff the Minnesota Multiphasic Personality Inventory-2 (MMPI-2)[2] test and obtained Plaintiff's clinical profile. Before providing the profile, he first noted his basis for believing Plaintiff's MMPI test results were accurate:

> [Plaintiff's] responses to the validity scales of a verbally administered form of the . . . MMPI indicate that he answered questionnaire items in an honest and open fashion. As such, his resulting clinical profile was considered an accurate reflection of his present psychological status. As such, his clinical scale configuration indicates that he is in *substantial emotional turmoil*. He is presently *significantly depressed*, tense and anxious. Individuals with similar profiles have feelings of hopelessness, manifestations of anxiety, fears and phobias. They are *socially isolated* and often have periods of paranoid ideation. They fear emotional commitment, avoid making decisions, are guilt-ridden, *self condemning and often show obsessive-compulsive features*.

(Tr. 355) (emphasis added). Dr. Wacker diagnosed Plaintiff with major depression and advised him to seek outpatient counseling (Tr. 356). Dr. Wacker further explained that major depression

---

[2]The MMPI-2 has 10 clinical scales which assess 10 major categories of abnormal human behavior. "The Depression scale measures clinical depression, which is characterized by poor morale, lack of hope in the future, and a general dissatisfaction with one's life." *See* http://psychcentral.com/lib/2011/minnesota-multiphasic-personality-inventory-mmpi/all/1/ (last visited May 13, 2013).

includes the following primary functional limitations: moody behavior, concentration problems, anxiety, possible obsessive-compulsive behaviors, social withdrawal, potential for paranoid ideation, problems with sustained motivation, poor impulse control and potential for substance abuse (Tr. 390).

Plaintiff testified at the hearing that he cannot control his anger and has to isolate himself to calm down (Tr. 44). In addition, when Plaintiff worked at Kroger, he slammed the carts after a supervisor told him to get them while someone else was already outside getting the carts (Tr. 35-36). At another job, Plaintiff became angry and threw a part he made across the floor because the part was made incorrectly (Tr. 45). Plaintiff exhibits moody behavior, social withdrawal and poor impulse control – functional limitations associated with major depression. He has also abused alcohol and used Ecstacy and Marijuana. The fact that Plaintiff's hearing testimony regarding his depression was minimal is insignificant considering Plaintiff has an IQ between 60 and 70, indicative of low intelligence and poor self-expression.[3]

Further, the fact that Plaintiff – who everyone agrees is at least mildly mentally impaired – did not identify depression as a work preclusive impairment and did not seek mental health treatment is of no moment: "it is common knowledge that depression is one of the most under[-]reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Warren E. Leavy, *Hidden Depression*, Chi. Trib., Feb. 1, 1996 at 7 (noting that nearly 17 million adult Americans suffer from depression in a given year and that two-thirds of them do not get treatment)); *see also Blakenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.

---

[3] Dr. Wacker noted, for example, that an individual with Plaintiff's mild mental retardation would have "great difficulty expressing himself through written language" (Tr. 355).

1989) ("[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation").[4]

Importantly, Plaintiff's depression need not be independently disabling for him to satisfy listing 12.05(C). This is so because, "[i]f the plaintiff's . . . impairment [was] required to be independently disabling, section 12.05(c) would be rendered meaningless. Therefore, something less than a preclusion from any substantial gainful employment must apply." *Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997) (quoting *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985)). Nor is Plaintiff's previous performance of gainful employment determinative of whether he meets the 12.05(C) requirements. As the Eighth Circuit has explained: "[t]he issue is not whether the claimant can perform gainful activity; rather, it is whether he has a[n] . . . impairment, other than his conceded mental impairment, which provides significant work-related limited function...." *Maresh v. Barnhart*, 438 F.3d 897, 901 (8th Cir. 2006). Dr. Wacker's findings and Plaintiff's testimony easily satisfy the required showing that Plaintiff's depression more than minimally affects his work ability.

Considering the low threshold required to satisfy the "severe" impairment requirement, and the absence of any evidence in the record contradicting Dr. Wacker's conclusion that Plaintiff was depressed during the relevant time period, this Magistrate Judge finds the ALJ erred by not finding Plaintiff disabled at step three of the disability analysis. *See Jackson v. Astrue*, 467 Fed.Appx. 214, 217 (W.D.Va. 2012) (severe impairment of depression function

---

[4] Defendant argues that Plaintiff's depression does not constitute a severe impairment because a treating physician did not prescribe or recommend mental health treatment. However, Plaintiff did not have medical insurance and could not afford to consult a physician on a regular basis. As Defendant concedes, "Plaintiff's failure to obtain medical treatment that he could not afford cannot justify an inference that his condition was not as serious as he alleged" (Dkt. No. 19 at 11 (CM/ECF)).

meets Prong 3 of Listing 12.05C); *Rains v. Astrue*, No. 11-322-SPS, 2012 WL 3962641 (E.D. Okla. Sept. 10, 2012) (same).

## IV. CONCLUSION

Because Plaintiff satisfies listing 12.05(C) for mental retardation – and is, therefore, conclusively presumed to be disabled at step three – this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner for calculation and award of benefits. *See Catron v. Astrue*, No. 08-00043, 2009 WL 2424679 (W.D. Va. Aug. 1, 2009) (remanding for an award of benefits where substantial evidence did not support the ALJ's finding that the plaintiff did not meet the listed impairment requirements for mental retardation, and where the uncontradicted evidence showed that the plaintiff met the requirements of § 12.05C).

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does

not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                                      s/Mark A. Randon
                                      Mark A. Randon
                                      United States Magistrate Judge

Dated: May 15, 2013

*Certificate of Service*

      I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, May 15, 2013, by electronic and/or ordinary mail.

                                      *s/Jane Johnson Acting for Eddrey Butts*
                                      *Case Manager for Magistrate Judge Randon*